1  TOMIO B. NARITA (SBN 156576)
   tnarita@snllp.com
2  ARVIN C. LUGAY (SBN 242599)
   alugay@snllp.com
3  SIMMONDS & NARITA LLP
   44 Montgomery Street, Suite 3010
4  San Francisco, CA 94104-4816
   Telephone: (415) 283-1000
5  Facsimile:   (415) 352-2625

6

7  Attorneys for Defendant
   Portfolio Recovery Associates, LLC

8

9                    UNITED STATES DISTRICT COURT

10                  SOUTHERN DISTRICT OF CALIFORNIA

11

12  JANET HEATHMAN,                  )  CASE NO.: 12-cv-00515-IEG-RBB
                                     )
13                                   )  **MEMORANDUM OF POINTS AND**
              Plaintiff,             )  **AUTHORITIES IN SUPPORT OF**
14                                   )  **MOTION FOR SUMMARY**
                                     )  **JUDGMENT BY DEFENDANT**
15            vs.                    )  **PORTFOLIO RECOVERY**
                                     )  **ASSOCIATES, LLC**
16                                   )
                                     )
17  PORTFOLIO RECOVERY               )
    ASSOCIATES, LLC,                 )  Date:    May 6, 2013
18                                   )  Time:    10:30 a.m.
                                     )  Crtrm.: 4-D
19            Defendant.             )
                                     )  Judge:  Hon. Irma E. Gonzalez
20  ———————————————                  )

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

3   II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

4   III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

5         A.   Legal Standard Governing Summary Judgment . . . . . . . . . . . . . . . . . .  5

6         B.   The Least Sophisticated Debtor Would Not Be Confused As To The
               Identity Of The Original Creditor, Because PRA Never Claimed It Was
7              The Original Creditor, And PRA Explicitly Alleged There Was A
               Predecessor In Interest Regarding The Account. . . . . . . . . . . . . . . . . . . .  5

8         C.   The State Complaint Did Not Contain Any Material False Or Misleading
               Misstatement That Would Impact A Consumer's Ability
9              To Intelligently Respond. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

10        D.   PRA Never Checked The Boxes On The Form Complaint
11             To Indicate That It Was Seeking To Recover On Money Lent or
               Account Stated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

12

13  IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Donohue v. Quick Collect, Inc.*
592 F.3d 1027 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11

*Durkin v. Equifax Check Servs., Inc.*
406 F.3d 410 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Federal Election Comm'n v. Toledano*
317 F.3d 939 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gonzalez v. Arrow Fin. Servs., LLC*
660 F.3d 1055, 1064 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Guerrero v. RJM Acquisitions, LLC*
499 F.3d 926, 934 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hahn v. Triumph Partnerships LLC*
557 F.3d 755 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Manlapaz v. Unifund CCR Partners*
2009 WL 3015166 (N.D. Ill. Sept. 15, 2009) . . . . . . . . . . . . . . . . . . . . . . . 11

*Miller v. Javitch, Block & Rathbone*
561 F.3d 588 (6th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Peters v. General Serv. Bureau, Inc.*
277 F.3d 1051 (8th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*Rosales v. Unifund CCR Partners*
2008 WL 5156681 (N.D. Ill. Dec. 5, 2008). . . . . . . . . . . . . . . . . . . . . . . . 11

*State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*
138 F.3d 772 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tourgeman v. Collins Financial Servs. Inc.*
2012 WL 3731807 (S.D. Cal. Aug. 29, 2012)). . . . . . . . . . . . . . . . . . . . . . . 10

*Wahl v. Midland Credit Mgmt., Inc.*
556 F.3d 643 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATE CASES**

*In re Marriage of Lippel*
51 Cal. 3d 1160 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vidrio v. Hernandez*
172 Cal. App. 4th 1443 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12


**FEDERAL STATUTES**

Fair Debt Collection Practices Act,
  15 U.S.C. § 1692 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Rules of Civil Procedure,
  56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**STATE STATUTES**

Rosenthal Fair Debt Collection Practices Act,
  Cal. Civ. Code § 1788 *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Constitution Article VI
  § 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Rule of Court
  Rule 1.31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
  Rule 1.35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Cal. Gov't Code
  § 68511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1  **I.      INTRODUCTION**

2          In the Fall of 2009, defendant Portfolio Recovery Associates, LLC ("PRA")

3  purchased an unpaid credit card account that had been issued to plaintiff Janet

4  Heathman ("Heathman") by Chase Bank, USA, N.A. ("Chase").  PRA sent a series of

5  collection letters to Heathman, inviting her to settle the account, and advising her that

6  it might have to take legal action unless a payment arrangement was made.  She did

7  not respond, so a lawsuit was filed in San Diego Superior Court.

8          The state court complaint alleged that PRA was entitled to recover the debt

9  under theories of "breach of contract" and the common counts of "open book

10  account" and "goods, wares and merchandise sold and delivered."  The pleading also

11  explicitly alleged that PRA had a predecessor in interest (*i.e.,* Chase) regarding the

12  account at issue.

13          Heathman claims that PRA did not list any creditor (other than PRA) in the

14  state court complaint, and that, by doing so, it represented that PRA "was in fact the

15  'original creditor,' or the party issuing credit, to Ms. Heathman."  *See* Docket 4, ¶ 24.

16  She says this violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et.*

17  *seq.* ("FDCPA") and the California Rosenthal Act because "the 'least sophisticated

18  debtor' would in fact be confused or mislead as to the identity of the 'original

19  creditor' on the account alleged by PRA in the [state court complaint]."  *Id*. ¶ 25.

20          A quick look at the state court complaint shows that there is absolutely no

21  factual basis for this claim.  PRA did <u>not</u> allege that it was the original creditor that

22  provided credit to Heathman.  The state court complaint explicitly alleges that the

23  original credit agreement was between Heathman and PRA's predecessor in interest.

24  The "least sophisticated debtor" would not think that PRA was claiming to be the

25  original creditor.  This claim must fail.

26          Any debtor in Heathman's position would understand that the complaint related

27  to her unpaid Chase account.  PRA had already sent a series of collection letters to

28  Heathman, informing her that it had purchased her Chase account, and advising her

1  that legal action was possible.  PRA later filed suit on the debt, as it said it might.

2  Heathman cannot claim that she was confused as to the identity of the original

3  creditor under these circumstances.

4          None of the allegations of the complaint are materially false or misleading

5  under the FDCPA, because they would not impact any debtor's ability to respond.

6  Heathman, like all consumers, would understand that she had only two choices when

7  served with the complaint.  She could file a timely response, or she could allow her

8  default to be taken.  Heathman chose to retain an attorney who filed a response.

9  Nothing alleged in the complaint would frustrate a consumer's ability to intelligently

10 respond, so there is no violation of the FDCPA or the Rosenthal Act.

11         Heathman also claims that PRA sued her under common count theories of

12 "money lent" and "account stated."  This is flatly false.  PRA never asserted either

13 claim.  Heathman is quoting language that appears next to <u>unchecked</u> boxes on the

14 form complaint.  As the California Supreme Court has held, when a litigant does <u>not</u>

15 check a box on a form complaint, this means the litigant is <u>not</u> making the allegation.

16 Even the least sophisticated debtor can read with care, and they will understand that

17 when a box on a form complaint is <u>not</u> checked, the language next to that box simply

18 does not apply.  Heathman testified that she understood this.  No FDCPA violation

19 can be based on allegations that were never made.  Summary judgment is proper.

20 **II.    <u>STATEMENT OF FACTS</u>**

21         Heathman admits that she incurred a financial obligation to Chase through use

22 of a credit card account ending in 1543 (the "Account").  *See* Declaration of Arvin

23 Lugay In Support of Defendant's Motion For Summary Judgment ("Lugay Decl."),

24 Ex. C [Heathman's Response to PRA's Requests for Admission No. 1].  Heathman

25 was the sole authorized user on the Account – no other person used it.  *See* Lugay

26 Decl., Ex. E [Heathman Depo. at 34:5-13].  She understood that the Account would be

27 subject to a written agreement, and had no reason to believe that she did not receive

28 an agreement from Chase.  *Id*. [Heathman Depo. at 34:18-23].

Chase mailed monthly statements for the Account to Heathman at her home address of 12440 Damasco Ct, San Diego, CA 92128. *Id*. *See* Lugay Decl., Ex. C [Heathman's Response to PRA's Requests for Admission No. 5]; Ex. E [Heathman Depo. at 6:14-19; 20:25-21:13]. Heathman was unable to pay the minimum monthly payments, and she eventually stopped making payments altogether without paying in full. *See* Lugay Decl., Ex. E [Heathman Depo. at 41:7-18; 44:15-18; 45:6-24]. She never contacted Chase by phone or by letter to dispute any of the charges, fees, or interest that had been applied to the Account. *Id*. [Heathman Depo. at 40:21-23; 42:9-43:6].

When PRA acquired the Account from Chase, on about September 16, 2009, the unpaid balance was $13,564.11. *See* Declaration of Mellisa Massey in Support of PRA's Motion for Summary Judgment ("Massey Decl") at ¶ 3. PRA sent an initial demand letter to Heathman on September 25, 2009, addressed to her at 12440 Damasco Ct, San Diego, CA 92128-1308. *Id*. at ¶ 5, Ex. A. The letter informed her that PRA had purchased her Account from Chase. *Id*.

A second letter was sent by PRA to Heathman on November 19, 2009, and it informed Heathman that the Account had been transferred to PRA's litigation department. *Id*. at ¶ 6, Ex. B. Then, on January 26, 2010, PRA sent a third letter to Heathman, and it contained a second notice that the Account had been transferred to PRA's litigation department. *Id*. at ¶ 7, Ex. C. None of the letters that PRA sent to Heathman were returned to PRA as undeliverable. *Id*. at ¶ 8.

The Account was later referred to CIR Law Offices ("CIR") for collection, and CIR was authorized to proceed with litigation if the firm deemed it appropriate. *Id*. at ¶ 9. CIR prepared a complaint and filed it on April 11, 2011 in San Diego County Superior Court (the "State Complaint"). *See* First Amended Complaint (Docket 4), Ex. A. The complaint was a California Judicial Council form complaint, and it asserted a cause of action for "Breach of Contract" and a cause of action for "Common Counts" which included a count for "open book account" and a count for

1   "goods, wares and merchandise sold and delivered." *Id.*  The prayer sought damages

2   of $13,564.11, plus prejudgment interest according to proof. *Id.*

3        The cause of action for "Breach of Contract" clearly states that the original

4   credit agreement for the account was between Heathman and PRA's **predecessor in**

5   **interest.**  It states an agreement was made between Heathman and "Plaintiff's

6   Predecessor on an account [now][1] owned by Plaintiff.  Plaintiff's predecessor can be

7   referred to as Plaintiff." *Id.* at p. 3, BC-1.

8        The State Complaint did not allege that it was seeking to recover on common

9   counts theories of "account stated" or "money lent." *Id.* at p. 4, CC-1 (a-b).  The

10  boxes next to the allegations for the common counts of "open book account" and for

11  "goods, wares and merchandise sold and delivered" are marked with a large "X." *Id.*

12  In contrast, the boxes next to the allegations for the common counts of "account

13  stated" and "money lent" are not marked with an "X."  Heathman testified that she

14  understood that the allegations next to checked boxes marked with an "X" inside them

15  were the only allegations made against her by PRA. *Id.* [Heathman Depo. at 65:21-

16  68:10].  She knew that allegations next to unchecked boxes were not being alleged by

17  PRA. *Id.*

18       Heathman was served with the State Complaint and the summons.  *See* Request

19  For Judicial Notice ("RJN"), Ex. B.  She could not recall when she first received or

20  read the complaint, but admitted that the language in the complaint did not discourage

21  her from responding to it.  *See* Lugay Decl., Ex. E [Heathman Depo. at 87: 17-22].

22  She understood that PRA had filed a lawsuit seeking to collect money from her, and

23  that it might get a judgment against her if she failed to respond. *Id.* [Heathman Depo.

24

25

26  _____

27       [1] The text of the complaint uses the word "not" instead of "now" but this is clearly
    a typo.  The least sophisticated debtor would understand, based on the text of the
28  complaint as a whole and the prior communications from PRA, that Chase is the
    predecessor in interest and that PRA is "now" the owner of the account.

1  at 64:4-12; 65:1-4; 90:20-91:2].  As a result she retained her present attorneys who

2  filed an answer to the State Complaint.  *Id*. [65:5-14 69:18-21].

3  **III.   ARGUMENT**

4       **A.   Legal Standard Governing Summary Judgment**

5       Summary judgment is appropriate when the "pleadings, depositions, answers to

6  interrogatories, and admissions on file, together with the affidavits, if any, show that

7  there is no genuine issue as to any material fact and that the moving party is entitled to

8  judgment as a matter of law."  *See* Fed. R. Civ. Proc. 56(c).  As the moving party,

9  Defendant may discharge its burden by "'showing' – that is, pointing out to the

10  district court – that there is an absence of evidence to support the nonmoving party's

11  case."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *accord Devereaux v.*

12  *Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*).

13       To survive this motion for summary judgment, Plaintiff "must present

14  competent evidence that creates a genuine issue of material fact."  *See Federal*

15  *Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).  The materiality of

16  a fact is determined by the underlying substantive law.  *See State of Calif., on Behalf*

17  *of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir.

18  1998).  "In short, 'summary judgment is appropriate if, on the record as a whole, a

19  rational trier of fact could not find for the non-moving party.'"  *Durkin v. Equifax*

20  *Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary judgment

21  on FDCPA claims).

22       **B.   The Least Sophisticated Debtor Would Not Be Confused As To The**
         **Identity Of The Original Creditor, Because PRA Never Claimed It**
23       **Was The Original Creditor, And PRA Explicitly Alleged There Was**
         **A Predecessor In Interest Regarding The Account**

24       Heathman claims that PRA represented that "it was in fact the 'original

25  creditor'" for the account at issue in the State Complaint.  *See* First Amended

26

27

28

---

Complaint (Docket 4), at ¶¶ 18-25).  She claims the "least sophisticated debtor"[2] would be confused or misled as to the identity of the original creditor.  Heathman is wrong.

PRA never alleged or implied it was the original creditor that provided credit to Heathman.  To the contrary, the breach of contract claim in the State Complaint explicitly alleges that the original credit agreement was between Heathman and PRA's predecessor in interest.  *See* First Amended Complaint (Docket 4), Ex. A at p. 3, BC-1.  Even the hypothetical "least sophisticated debtor" can read with care, and that consumer would not interpret the State Complaint to allege that PRA was the original creditor.  Heathman and her attorneys either did not read the State Complaint carefully before they filed suit, or they elected to affirmatively misrepresent its allegations.  In either case, summary judgment for PRA is proper.

**C.    The State Complaint Did Not Contain Any Material False Or Misleading Misstatement That Would Impact A Consumer's Ability To Intelligently Respond**

There are no materially false or misleading statements in the State Complaint that would frustrate the ability of a consumer to intelligently respond.  The allegations made in the State Complaint must be evaluated in context.  In a series of letters sent months before the suit was filed, PRA informed Heathman that it had purchased the Account from Chase, and that it was considering taking legal action to collect it. Each of the letters clearly indicated that this was an account originated by Chase. Further, the summons served along with State Complaint clearly explained Heathman's options and obligations for responding.  None of the allegations made in the State Complaint would frustrate her ability to intelligently choose her response.

---

[2] This Court must apply the "least sophisticated consumer" standard to determine whether a collector's communication complies with the FDCPA.  *See Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 934 (9th Cir. 2007).  This standard presumes that a debtor will read collection communications "as a whole," and with some degree of care.  *See Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1064 (9th Cir. 2011).

1    Even if the "least sophisticated consumer" in Heathman's position were unsure about

2    the identity of the original creditor, they would know that they need to file a response

3    to the State Complaint, or they would risk having a judgment entered against them.

4    Heathman, like any consumer, understood this.  She hired an attorney and filed a

5    response.  Her claims here must fail.

6         The Ninth Circuit and circuit courts across the country recognize that an

7    allegedly false or misleading statement does not violate the FDCPA unless the

8    statement is "material."  *See, e.g., Donohue v. Quick Collect, Inc.*, 592 F.3d 1027,

9    1033-34 (9th Cir. 2010).[3]  A "material" misstatement is one that is "genuinely

10   misleading" and that "may frustrate the consumer's ability to intelligently choose his

11   or her response" to the collector's communication.  *Donohue*, 592 F.3d at 1034;

12   *Hahn*, 557 F.3d at 757-58 ("The statute is designed to provide information that helps

13   consumers to choose intelligently, and by definition immaterial information neither

14   contributes to that objective (if the statement is correct) nor undermines it (if the

15   statement is incorrect).").

16        In *Donohue*, the plaintiff challenged a state court complaint which had sought

17   the "sum of $270.99, together with interest thereon of 12% per annum . . . in the

18   amount of $32.89."  592 F.3d at 1029.  The collector was entitled to the $32.89, but

19

20

21   _____

22        [3]  *See also Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009)
     (letter that accurately stated total amount due did not violate §§ 1692e or e(2)); *Wahl v.*
23   *Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ("If a statement would
     not mislead the unsophisticated consumer, it does not violate the FDCPA - even if it is
24   false in some technical sense."); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596
     (6th Cir. 2009); *Peters v. General Serv. Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir.
25   2002) (noting that the unsophisticated debtor standard was "designed to protect
     consumers of below average sophistication or intelligence, but [] also contain[s] an
26   objective element of reasonableness that prevents liability for bizarre or idiosyncratic
     interpretations of collection notices.") (citations omitted).  A statement that is merely
27   "susceptible of an ingenious misreading" does not violate the FDCPA.  *Id*. at 1056.

28

1    that figure was not actually comprised of 12% interest on the principal balance due.[4]

2    Thus, the statement was technically false.  *See id*. at 1034.

3          Despite this false statement, the Ninth Circuit ruled that the complaint did not

4    violate the FDCPA.  The complaint "sought recovery of sums to which Quick Collect

5    was clearly and lawfully entitled" even though it incorrectly labeled the component

6    parts of the debt.  *Id*. at 1033.  *Donohue* notes:

7          In assessing FDCPA liability, **we are not concerned with mere technical
          falsehoods that mislead no one**, but instead with genuinely misleading

8          statements that may frustrate a consumer's ability to intelligently choose his or
          her response.  **Here, the statement in the Complaint did not undermine

9          Donohue's ability to intelligently choose her action concerning her debt.**

10   *Id*. at 1034 (emphasis added).  Donohue was unable to identify how she would have

11   acted differently in the absence of the misstatement:  "Even if the Complaint had

12   separated $32.89 into interest and finance charges, we can conceive of no action

13   Donohue could have taken that was not already available to her on the basis of the

14   information in the Complaint—nor has Donohue articulated any different action she

15   might have chosen."  *Id*.

16         Here, as in *Donohue*, there are no materially false or misleading statements

17   concerning the identity of the original creditor in the State Complaint that would

18   frustrate the least sophisticated debtor's ability to intelligently respond.  Heathman

19   knew that PRA had purchased the Account from Chase long before the State

20   Complaint was filed.[5]  The State Complaint explicitly alleged that PRA had a

---

23         [4]  Rather, the $32.89 figure was comprised of $24.07 in pre-assignment finance
      charges (properly assessed by the original creditor) and $8.82 in post-assignment

24   interest calculated at the 12% annual rate.

25         [5]  Shortly after purchasing the Account, PRA sent an initial demand letter to

26   Heathman on September 25, 2009.  *See* Massey Decl. at ¶¶ 3 and 5.  In it, PRA informed
      Heathman that it had purchased her Account from Chase.  *Id*. at ¶ 5, Ex. A.  PRA

27   followed up with two more letters to Heathman sent in November 2009 and January
      2010, notifying her it was considering taking legal action in order to collect.  *Id*. at ¶¶

28   6-7, Exs. B-C.  None of the letters were returned as undeliverable.  *Id*. at ¶ 8, Ex. C.

predecessor in interest on the Account.  The least sophisticated debtor in Heathman's position would know that PRA was suing to collect the credit card account that it had purchased from Chase and that it had been trying to collect for over a year.  There is nothing alleged in the State Complaint that would frustrate a consumer's ability to respond to it.

Even if the "least sophisticated consumer" who received the State Complaint was unsure about the identity of the original creditor, that consumer would not be confused about how to respond.  The summons served with the complaint is a standardized form prepared for <u>mandatory</u> use by the California Judicial Council.  It provides the debtor with a plain language explanation telling the consumer their exact obligations and options for responding:

> **You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.  A letter or phone call will not protect you.  Your written response must be in proper legal form if you want the court to hear your case.  There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. . . . If you do not file your response on time, you may lose the case by default, and your wages, money and property may be taken without further warning from the court.**

*See* Request for Judicial Notice, Ex. B.[6]

If Heathman or any other consumer served with the State Complaint believes they are not responsible for a debt, there is no confusion about how to respond.  There are only two possible choices – they can either file an answer and have a trial, or have a default entered against them.

---

[6] The summons further advises the debtor: "There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may want to call an attorney referral service.  If you cannot afford an attorney, you may be eligible for free legal services from a non profit legal services program.  You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association." *Id.*

1    This Court recently acknowledged this very point in *Tourgeman v. Collins*

2  *Financial Servs. Inc., et al.*, 2012 WL 3731807 (S.D. Cal. Aug. 29, 2012), where a

3  plaintiff alleged that allegations made in a state court complaint violated the FDCPA,

4  because they misidentified the name of the original creditor on his loan.  *See id.* at *7.

5  This Court rejected the argument, in part because the summons served with the

6  complaint explained exactly how the debtor should respond:

7        . . . the Court does not find the misidentification of the original creditor to be
        materially misleading such that the individual served with the complaint's
8        ability to respond would be frustrated. Indeed, the summons specifically sets
        forth the procedure and options for the recipient of the lawsuit to undertake.
9        **There is no evidence that Plaintiff, or the least sophisticated debtor in this
        circumstance, would have behaved differently had the original creditor**
10       **been correctly identified.**

11  *Id.* (citation omitted, emphasis added).[7]

12       The Ninth Circuit reached the same conclusion in *Donohue*, when it noted that

13  the debtor could have "challenged the accuracy or legality of the total debt and

14  principal owed" or could have paid the debt, and that the misstatement in the

15  complaint did not impact those choices.  592 F.3d at 1034.

16       The Eighth Circuit's decision in *Peters* is also persuasive here.  There, the court

17  found that a consumer would not be confused by a letter summons (called a "VA")

18  that was served with the complaint:  "Although an unsophisticated consumer cannot

19  be expected to know the legal meanings of terms, he or she would understand that the

20  VA relates to the legal process and that it offers two options:  to 'appear and deny' a

21  petition 'or otherwise plead.'".  *See, Peters*, 277 F.3d at 1056.  The FDCPA claim in

22  *Peters* failed, because the summons did not confuse the consumer about how to

23  respond.  "Even if it were deemed to be literally false, however, it would not mislead

24  because it effectively conveys the consequences of failing to sign and return the VA."

25

26  _____

27       [7] The *Tourgeman* Court also noted that the consumer had received collection
    letters before the suit was filed which correctly identified the original creditor.  *See*
28  *Tourgeman*, 2012 WL 3731807, at *7.  Each of the collection letters sent by PRA
    reflected that Chase was the original creditor.  *See* Massey Declaration, Exs. A-C.

1    *Id.* Here, just like *Peters*, the summons served with the complaint explained exactly
2    what the consumer needed to do in order to respond.[8]

3        When Heathman learned about the complaint, she responded the way that a
4    typical consumer might – she contacted a lawyer, who filed an answer on her behalf.
5    Although she now alleges that PRA somehow misstated that it was the original
6    creditor, she cannot point to any false or misleading statement in the State Complaint
7    that caused her to act differently or that limited her ability to make an intelligent
8    choice. *See Donohue*, 592 F.3d at 1034.  The claim fails.

9    **D.    PRA Never Checked The Boxes On The Form Complaint To Indicate
10   That It Was Seeking To Recover On Money Lent or Account Stated**

11       Heathman has sued PRA based upon allegations that it never made in the State
12   Complaint.  She claims that PRA sued her under the theory of "Money Lent" and
13   "Account Stated."  *See* First Amended Complaint, ¶¶ 26-31.  This is plainly not true.
14   She cannot base her FDCPA claim on words that appear next to <u>unchecked</u> boxes on
15   the California Judicial Council form complaint filed against her.  An unchecked box is
16   not an allegation.  These claims must fail.

17       The form complaint filed by PRA was designed by the California Judicial
18   Council.  The Judicial Council is comprised of justices from the California Supreme
19   Court, judges from the California Courts of Appeal and trial court judges, and it
20   derives its power "to adopt rules for court administration, practice and procedure"

---

22       [8] Courts have also dismissed FDCPA actions based upon the contents of affidavits
23   that were served with collection complaints, because the affidavits would not impact the
     consumer's ability to respond. *See, e.g., Manlapaz v. Unifund CCR Partners*, 2009 WL
24   3015166 (N.D. Ill. Sept. 15, 2009) ("the question of whether Kenney technically had
     personal knowledge of the facts that she would testify to or not would not likely affect
25   a consumer's reaction to the lawsuit.  Thus, the Court grants Defendants' motion to
26   dismiss Manlapaz's claim that attachment of the Kenney affidavit was a violation of the
     FDCPA because of Kenney's claims of personal knowledge."); *Rosales v. Unifund CCR
27   Partners*, 2008 WL 5156681 (N.D. Ill. Dec. 5, 2008) ("Thus, Rosales' concerns
     regarding the propriety of the Kenney Affidavits attached to state court pleadings are
28   state concerns and can be addressed by the state courts.").

directly from the California Constitution.  *See* Cal. Const., Art. VI., § 6; *see also*
*Vidrio v. Hernandez*, 172 Cal. App. 4th 1443, 1459 (2009).  The Judicial Council has
the power to create forms that are approved for "optional" use by litigants in
California state courts, or forms for "mandatory" use.  *See* Cal. R. Ct. Rule 1.31,
1.35; Cal. Gov't Code § 68511. The form complaint used by PRA in the state court
action is approved for optional use by the Judicial Council.

The California Supreme Court has recognized that if a box is <u>not</u> checked on a
Judicial Council form, this means the corresponding allegation or request for relief
was *not* made.  *See, e.g., In re Marriage of Lippel*, 51 Cal. 3d 1160, 1169-70 (1990)
(wife's failure to check box requesting child support prevented trial court from
awarding it:  "She did not check the box requesting child support. Ronald was,
therefore, never put on notice that child support would be placed in issue in the
dissolution proceeding, since a copy of the petition served on him did not raise child
support as an issue.").

Heathman has ignored the allegations of the State Complaint that she attached
to her First Amended Complaint.  The boxes corresponding to "Account Stated" and
"Money Lent" are not checked.  *See* Docket 4, Ex. A, CC-1(a)(2) and (b)(4).  As the
California Supreme Court has observed: "the manner in which boxes are checked, or
not checked, informs and puts the respondent on notice of what specific relief the
petitioner is, or is not seeking."  *In re Marriage of Lippel*, 51 Cal. 3d at 1169-70.

Heathman's theory of recovery assumes the consumer will be confused because
she will consider all of the text contained in form complaints – even if the box relating
to the text is not unchecked.  If adopted, this theory would render the approved
Judicial Council form complaint completely useless, because the form would always
contain contradictory "allegations."[9]

[9] For example, every form complaint would simultaneously "allege" that the
defendant is a natural person, a corporation and an unincorporated entity. *See* RJN, Ex.
A,  para. 4.  Every complaint would simultaneously "allege" that the plaintiff has

1    Fortunately, this is not the law.  As the Ninth Circuit has recognized, the

2  "FDCPA does not subject debt collectors to liability for bizarre, idiosyncratic or

3  peculiar misinterpretations" of collection communications.  *See Gonzales*, 660 F.3d at

4  1062 (citations omitted).  Any consumer will understand that verbiage that appears

5  next to a box that is <u>not</u> checked reflects an allegation that is <u>not</u> being asserted.

6    Heathman understood this.  She testified that the only allegations made by PRA

7  in the State Complaint were those next to "checked" boxes that were clearly marked

8  with an "X."  *See* Lugay Decl., Ex. E [Heathman Depo. at 65:21-68:10].  She

9  understood that PRA was not making the allegations next to unchecked boxes.  *Id.*

10  There is no confusion here.  These claims fail.

11  **IV.   CONCLUSION**

12    For each of the forgoing reasons, PRA respectfully requests that the Court enter

13  an Order granting summary judgment for PRA on all claims.

14

15  DATED: March 4, 2013              SIMMONDS & NARITA LLP
                                     TOMIO B. NARITA
16                                   ARVIN C. LUGAY

17

18                                   By:   s/Arvin C. Lugay _____
                                          Arvin C. Lugay
19                                        Attorneys for Defendant
                                          Portfolio Recovery Associates, LLC
20

21

22

23

24

25

26

27  _____

28  complied with the applicable claims statutes, and also that it is excused from complying
    with those statutes.  *Id.*  para 5.

**PROOF OF SERVICE**

I, Arvin C. Lugay, hereby certify that:

I am employed in the City and County of San Francisco, California.  I am over the age of eighteen years and not a party to this action.  My business address is 44 Montgomery Street, Suite 3010, San Francisco, California 94104-4816.  I am counsel of record for the defendants in this action.

On March 4, 2013, I caused the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC** to be served upon the parties listed below via the Court's Electronic Filing System:

**<u>VIA ECF</u>**

Clinton J. Rooney
rooneycdi@gmail.com
Counsel for Plaintiff

Robert L. Hyde
bob@westcoastlitigation.com
Counsel for Plaintiff

Joshua Swigart
josh@westcoastlitigation.com
Counsel for Plaintiff

Stephen G. Recordon
sgrecordon@aol.com
Counsel for Plaintiff

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on this 4th day of March, 2013.

By:   s/Arvin C. Lugay
Arvin C. Lugay
Attorneys for defendant
Portfolio Recovery Associates, LLC